IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TAMMY DENSMORE**                                                                                      **PLAINTIFF**

**VS.**                                               **4:05CV00770-WRW**

**PILGRIM'S PRIDE CORPORATION**                                               **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Summary Judgment,[1] and Plaintiff's Motion to Strike Defendant's Reply to Plaintiff's Response.[2] Also pending is Plaintiff's Motion to Amend her Complaint,[3] to which Defendant responded.[4]

Plaintiff's complaint[5] alleges that Defendant interfered with her rights under the Family Medical Leave Act ("FMLA") and retaliated against her for requesting FMLA leave. Plaintiff also claims that she was terminated in 2004 because of her gender and pregnancy in violation of the Arkansas Civil Rights Act[6] and Title VII.[7]

Defendant denies Plaintiff's allegations and argues that it is entitled to judgment as a matter of law because (1) Plaintiff did not have a "serious medical condition" and was not

---

[1] Doc. No. 16.

[2] Doc. No. 34.

[3] Doc. No. 57.

[4] Doc. No. 59.

[5] Doc. No. 1.

[6] Ark. Code Ann. § 16-123-101 *et seq.*

[7] 42 U.S.C. § 2000e *et seq.*

entitled to FMLA leave in May 2003; (2) Plaintiff was not entitled to FMLA leave in June 2004, because she did not work a total of 1250 hours before she requested time off; (3) Plaintiff did not present sufficient evidence to support a claim of retaliation based on the FMLA; and (4) Plaintiff does not make out a *prima facie* case for gender or pregnancy discrimination related to the May 2004 termination.

## I. Background

Defendant uses a point system to determine when an employee should be terminated for missing work. If an employee accrues 12 points, termination is automatic.

In May 2003, Plaintiff went over the 12 point limit because she injured her hand and missed four days of work (on the recommendation of Dr. Starnes, her treating physician). According to Dr. Starnes, Plaintiff had swelling, bruising, and a decreased range of motion, but had not suffered an injury serious enough to require prescription pain medication. Dr. Starnes ordered Plaintiff to have an x-ray, stay home, take ibuprofen, and keep ice on her hand, but he did not require a follow-up visit.[8] Defendant denied Plaintiff's request for FMLA leave, and she was terminated. After this, she filed a union grievance. As a result of the this process, her termination was changed to a suspension without pay, she was reinstated in October 2003, and she was given 11 points for accrued absences.

Plaintiff was fired again in June 2004. This time, Plaintiff missed work due to pregnancy. Under the FMLA, an employee must work 1250 hours in the previous 12 months, before becoming eligible for leave. When Plaintiff took off work, she had not accrued enough hours to be eligible for FMLA leave. She was unable to acquire the requisite number of hours because of her previous suspension.

---

[8]Def. Ex. 4.

2

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[9]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[10]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[11]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[12]  I must view the facts in the light most favorable to the party opposing the motion.[13]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to
> set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should

---

[9]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[10]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[11]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[12]*Id.* at 728.

[13]*Id.* at 727-28.

be granted.[14]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[15]

## III. Authority

### A. Interference and Retaliation Under the FMLA

Under the FMLA, eligible employees are entitled to take leave from work for certain family or medical reasons, including a serious health condition that causes an inability to work.[16] "The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period."[17]

An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any FMLA right.[18] Interference includes refusing to authorize FMLA leave or discouraging an employee from using such leave. It also includes manipulating the process to avoid responsibility under FMLA.[19] "An employer's action that deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights."[20] Such conduct gives rise to an the

---

[14]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[15]*Anderson*, 477 U.S. at 248.

[16]*Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1090 (8th Cir. 2001)(*quoting* 29 U.S.C. § 2612(a)(1); *Reynolds v. Phillips & Temro Indust., Inc.*, 195 F.3d 411, 413 (8th Cir. 1999)).

[17]*Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (*citing* 29 U.S.C. § 2612).

[18]29 U.S.C. § 2615(a)(1).

[19]29 C.F.R. § 825.220(b).

[20]*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

4

interference theory of recovery.[21] In such a claim, the employee must show that she was entitled to FMLA benefits, but she does not have to show that the employer was motivated by a discriminatory intent.[22]

The FMLA also prohibits employers from discriminating or retaliating against an employee for asserting rights under the Act.[23] Unlike an interference claim -- a claim based on retaliation requires proof of intent.[24] Retaliation occurs when "an employer considers an employee's use of FMLA leave as a negative factor in an employment action."[25]

An adverse employment action that is based on an employee's use of FMLA leave, is "actionable."[26] A retaliation claim can be proved by circumstantial evidence, using the *McDonnell Douglas* burden-shifting analysis.[27] First, the employee must establish a prima facie case of retaliatory discrimination by showing that "she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action."[28] Second, once a *prima facie* case is established, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for

---

[21]*Id. (citing Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005).

[22]*Id.* (*citing Russell v. N. Broward Hospital*, 346 F.3d 1335, 1340 (11th Cir. 2003).

[23]*Darby*, 287 F.3d at 679 (*citing* 29 U.S.C. § 2612(a)(2)).

[24]*Stallings*, 447 F.3d at 1050.

[25]*Darby*, 287 F.3d at 679.

[26]*Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).

[27]*Id.* (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

[28]*Id.*

its actions.[29] If an employer can state such a reason, the burden shifts back to the employee to demonstrate that the "employer's proffered reason is pretextual."[30] The employee must present evidence that (1) creates a question of fact on pretext and (2) raises a reasonable inference of retaliation.[31]

To prove that she suffered discrimination or retaliation due to taking FMLA leave, Plaintiff may use the direct or indirect methods.[32] There are two types of permissible evidence under the direct method: direct evidence and circumstantial evidence. Direct evidence usually involves an admission of bias by the decision-maker. Circumstantial evidence allows a jury to infer intentional discrimination from the decision-maker's actions.

To establish an FMLA claim by indirect evidence, a plaintiff can show that after taking FMLA leave she was treated less favorably than other similarly situated individuals who did not take FMLA leave.[33] This kind of an assessment must be made by adding up the differences and similarities in light of all the evidence to determine if a plaintiff has created a fact issue on the matter of pretext.[34]

**B. Serious Health Condition**

---

[29] *Id.* at 833.

[30] *Id.*

[31] *Id.*

[32] *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000).

[33] *Hill v. Stoughton Trailer, LLC.*, 445 F.3d 949 (7th Cir. 2006) (*citing Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)).

[34] *Kendrick v. Penske Trans. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (*quoting Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989)).

Where absences are not the result of a "serious health condition" the FMLA does not come into play.[35] To meet the requirements of a "serious health condition," an employee is required to show: (1) she was incapable of preforming her job for a period of time; (2) she was incapacitated for over three days; and (3) she received continuing treatment by a health care provider within the period.[36] "Continuing treatment" under the FMLA regulations means that the employee is treated two or more times for the injury or illness by a health care provider.[37] Treatment by a health care provider includes actual treatment for the underlying condition, and it also includes examinations to determine if a serious condition exists.[38] Whether an employee suffers from a "serious health condition" is a mixed question of fact and law.[39]

When an employee requests leave for a serious health condition, the employer may request certification by the employee's health-care provider.[40] Then, the employer must (1) provide written notice to the employee that it requires such certification, and (2) advise the employee of the consequences of a failure to provide certification.[41] Moreover, the employer must give the employee with at least 15 calendar days to submit the medical certification.[42] Failure to provide such notice and opportunity constitutes "interfering with, restraining, or

---

[35]*Bailey v. Amsted Indus., Inc.*, 172 F.3d 1041, 1045-46 (8th Cir. 1999).

[36]*Rankin v. Seagate Technologies, Inc.,* 246 F.3d 1145, 1148 (8th Cir. 2001); *Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 122-23 (8th Cir.1997).

[37]29 C.F.R. § 825.114(a)(1)(A).

[38]29 C.F.R. § 825.114(b).

[39]*Thorson v. Gemini*, *Inc.*  205 F.3d 370 (8th Cir. 2000).

[40]29 U.S.C. § 2613(a); *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 777 (7th Cir. 2000).

[41]29 C.F.R. § 825.305.

[42]29 C.F.R. § 825.305.

7

denying the exercise of rights provided by the Act."[43] The certification must meet specific criteria.

Certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work.[44] Once an employer is aware that an employee is requesting leave under the FMLA, the employer should collect any additional information necessary to make the leave comply with the requirements of the FMLA.[45] Further, if the employer finds a certification incomplete, it must "provide the employee a reasonable opportunity to cure any such deficiency."[46] If an employer receives inadequate information on the certification, termination is not an appropriate course of action.[47] However, in some cases the certification may show that the employee doesn't qualify. In this case, the employer is entitled to rely on a *negative* certification when it denies a FMLA leave request.[48] In short, the question is whether the certification is negative, or inadequate. If it is negative, the employer may rely on it to deny leave outright -- but, if it is inadequate, the employer has a duty to investigate further before making its decision.

### C. Eligibility

---

[43] 29 C.F.R. § 825.200.

[44] 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306.

[45] *Hammon v. DHL Airways, Inc.*, 165 F.3d 441 (6th Cir. 1999).

[46] 29 C.F.R. § 825.305(d); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337-38 (6th Cir. 2005); *Miller v. AT & T Corp.*, 250 F.3d 820, 836 (4th Cir. 2001).

[47] *Peter v. Lincoln Technical Institute, Inc.*, 255 F.Supp. 2d 417 (E.D. Pa. 2002).

[48] *Stoops v. One Call Communications, Inc.*, 141 F.3d 309 (7th Cir. 1998) (when doctor indicated on the medical certification that the employee was not incapacitated--the employer did not violate FMLA by relying on this certification, absent overriding medical evidence.)(emphasis added).

The FMLA grants eligible employees up to twelve weeks of leave during any twelve-month period including the birth of a child.[49] To be eligible for FMLA, an employee must be employed "for at least 12 months by the employer," and must have given "at least 1250 hours of service during the previous 12-month period."[50]

In *Plumley v. Southern Container, Inc.*,[51] the First Circuit held that "only those hours that an employer suffers or permits an employee to do work (that is, to exert effort, either physically or mentally) for which that employee has been hired and is being paid by the employer can be included as hours of service within the meaning of the FMLA."[52] However, the Sixth Circuit disagreed in *Ricco v. Potter*,[53] and held that the hours of service requirement in the FMLA and Section 207 of the Fair Labor Standards Act include hours that an "employee wanted to work, but was unlawfully prevented by the employer from working."[54] The Sixth Circuit explained: "denying employees credit towards the hours-of-service requirement for hours that they would have worked, but for their unlawful termination, rewards employers for their unlawful conduct."[55]

---

[49]29 U.S.C. § 2612(a)(1)(A); *see also Moore v. Payless Shoe Source, Inc.*, 139 F.3d 1210, 1213 (8th Cir. 1998).

[50]29 U.S.C. § 2611(2)(A)(i)-(ii); *Kaufman v. Federal Express Corp.*, 426 F.3d 880 (7th Cir. 2005).

[51]*Plumley v. Southern Container, Inc.*, 303 F.3d 364 (1st Cir. 2002).

[52]*Id.* at 370.

[53]*Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004); *see also Sullivant v. Select Brand Dist. Inc.* 5:02CV00094 (E.D. Ark. 2003)(Defendant is estopped from taking advantage of previous illegal conduct to claim an employee is not eligible for FMLA)).

[54]*Id.* at 604.

[55]*Id.*

**D. Gender and Pregnancy Discrimination**

Title VII of the Civil Rights Act prohibits an employer from discriminating against any individual because of sex.[56] The Pregnancy Discrimination Act ("PDA") amended Title VII by explicitly including discrimination based on pregnancy within the definition of sex discrimination, and required that women affected by pregnancy and childbirth should be treated the same as other non-pregnant employees that are similar in their ability or inability to work.[57] The PDA does not require preferential treatment of pregnant employees and does not require employers to treat pregnancy-related absences more leniently than other absences.[58]

Plaintiff asserting a pregnancy discrimination claim under Title VII must show she was discriminated against because of her pregnancy, rather than because of sex.[59] A pregnancy discrimination case is evaluated under the same framework as other intentional sex discrimination cases under Title VII.[60]

The employee bears the burden of making a *prima facie* case by showing that: (1) she was pregnant; (2) she suffered an adverse employment action; (3) she was qualified for the job; (4) she was replaced by someone outside the protected class, or in the alternative, a comparable

---

[56]42 U.S.C. § 2000e-2(a)(1).

[57]42 U.S.C. § 2000e(k).

[58]*Stout v. Baxter Healthcare Corp.*, 282 F.3d 856 (5th Cir. 2002).

[59]*Zeuner v. Rare Hospitality Intern., Inc.*, 338 F. Supp. 2d 626 (M.D. N.C. 2004).

[60]*Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748 (E.D. Pa. 2002); *see also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123 (D. Kan. 2002).

non-protected employee was treated better;[61] and (5) there is a connection between her pregnancy and the adverse action.[62]

The Arkansas Civil Rights Act ("ACRA") grants to qualified persons the right to be free from employment discrimination "because of gender."[63] The definition section of the Act also makes clear that "because of gender" includes "on account of pregnancy."[64] Under ACRA, the elements necessary to establish a prima facie case of gender and pregnancy discrimination are identical to the elements necessary under Title VII. [65]

The burden-shifting frame-work of *McDonnell Douglas*[66] is employed for gender and pregnancy discrimination claims.  The employee must establish a *prima facie* case of discrimination, at which point the employer has to produce evidence of a legitimate reason for its actions, then the employee has to produce evidence that the proffered reason was not the true reason.[67]

---

[61]*Mullet v. Wayne-Dalton Corp.*, 338 F. Supp. 2d 806 (N.D. Ohio 2004).

[62]*Cline v. Catholic Dioceses of ToledoI,* 206 F.3d 651 (6th Cir. 2000).

[63]Ark. Code Ann. § 16-123-107(a)(1).

[64]Ark. Code Ann. § 16-123-102(1).

[65]*Flentje v. First Nat. Bank of Wynne*, 340 Ark.  563, 571 (Ark. 2000).

[66]*McDonnell Douglas, Corp.*, 411 U.S. at 802-803.

[67]*Gleklen v. Democratic Congressional Campaign Committee, Inc*., 199 F.3d 1365 (D.C. Cir. 2000).

**IV. Discussion**

Plaintiff presented sufficient evidence creating factual questions that she medically qualified for FMLA leave in 2003, and that she was eligible for leave in 2004. In 2003, Plaintiff injured her hand and was treated by Dr. Starnes, who referred her to a radiologist for x-rays. Under the FMLA, Plaintiff must show that she had a serious medical condition -- meaning that she was incapable of working for than three days, and required continuous medical treatment. Defendant maintains that Plaintiff did not need continuous medical care because she saw her doctor once. If she was seen at least twice by a doctor -- she would qualify.

Treatment for diagnostic purposes is sufficient to meet the FMLA's continuing treatment requirement. Therefore, Plaintiff's visit to a radiologist can be considered part of her treatment. Further, the evidence shows that she met the other requirements for a serious health condition because Dr. Starnes certified that she was unable to work for four days.[68] Because Plaintiff's 2003 injury required treatment on more than one occasion, she has created a reasonable inference that she was qualified for protection under the FMLA. Plaintiff succeeded in creating a reasonable inference that Defendant interfered with her FMLA rights.

Defendant maintains that, even assuming Plaintiff qualified for FMLA leave in 2003, the certification signed by Dr. Starnes was a *negative* certification (meaning that it certified that she did not have a serious health condition). Defendant asserts that when Dr. Starnes completed the certification, he indicated that Plaintiff did not need further medical care, which clearly established that she did not qualify for FMLA. Because of this, Defendant argues, it had a right to rely on this document when it denied Plaintiff's leave request. Plaintiff counters that Defendant had a duty to conduct additional investigation before firing her. So, Plaintiff

---

[68]Doc. 29-9, Pl. Ex. H.

maintains that the certification was inadequate and she should have been given the opportunity to cure its defects by providing additional information. Defendant contends that the certification was clear on its face, and no further investigation was required.

Under the FMLA, the certification must include the following information: the date and probable duration of the condition and whether it renders an employee unable to work. A jury could conclude that the certification signed by Dr. Starnes provided the necessary information required by the FMLA regulations, i.e., he told Defendant that she could not work; he outlined the duration of her disability; he gave other relevant medical information; and he does not absolutely rule out the need for continuing medical care. Thus, there is sufficient evidence creating an inference that the certification did not clearly disqualify Plaintiff. A jury could reasonably conclude that Defendant had a duty to investigate before it terminated Plaintiff.

If a jury finds that the 2003 termination represents an interference with Plaintiff's FMLA rights, it could reasonably infer that the 2004 termination was also the result of interference with FMLA rights, or retaliation for her request for leave in 2003.

Defendant argues that Plaintiff was not eligible for FMLA leave in 2004, due to the "hours of service" requirement. However, one illegal termination should not be used to justify a second termination.[69] In this case, a jury could conclude that, but for the first termination (that lead to a suspension without pay) Plaintiff would have met the "hours of service" requirement when she needed to leave work due to her pregnancy. A jury could also reasonably infer that Defendant retaliated against Plaintiff, when her five month suspension was used to determine eligibility for pregnancy leave.

---

[69]*Ricco*, 377 F.3d at 604.

Finally, Plaintiff presented evidence that other similarly situated employees were allowed to return to work shortly after being terminated for exceeding the 12 point limit.[70] By comparison, Plaintiff had to file a grievance before she was allowed to return to work after five months. Defendant asserts that Plaintiff has not shown that the other employees who received more favorable treatment were "similarly situated" in all relevant respects. However, Plaintiff's shift manager, Ed Shelley, testified that it was normal company practice to allow employees to avoid termination if there were "mitigating" factors connected to the absence.[71] Mr. Shelly stated that "illness" was considered a mitigating factor.[72] Mr. Shelley also stated that Plaintiff was meeting the legitimate expectations of the employer at the time she was terminated in 2003.[73] From these facts, a jury could conclude that, in Plaintiff's case, the Defendant ignored its practice of considering mitigating circumstances.

Plaintiff alleges that her 2004 termination and was also motivated by her gender and pregnancy in violation of Title VII and ACRA. Defendant argues that the Plaintiff was suspended in 2004 because she exceeded the allotted 12 points for absenteeism. Federal law does not require employers to make accommodations for pregnant women; employers can treat pregnant women as badly as they treat nonpregnant employees.[74] But, there is enough evidence that Plaintiff was treated less favorably than nonpregnant employees.

---

[70]Doc. No.

[71]Doc. 25-5, Pl. Ex. D, at 8-9.

[72]*Id.*

[73]*Id.* at 15-16.

[74]*Alvarez Cabrera v. Trataros Const. Inc.*, 184 F. Supp. 2d 149 (D.P.R. 2002)

14

Plaintiff presented the following evidence to support her claims: on December 5, 2005, a male employee was reinstated after being terminated on November 29, 2005 because of "compelling circumstances;"[75] on May 13, 2004, a female employee was reinstated after her May 11, 2004 termination because of her "compelling circumstances;"[76] on October 20, 2005, a male employee was reinstated after his October 19, 2005 termination because of "compelling circumstances;"[77] and on December 21, 2005, a male employee was reinstated after his December 21, 2005 termination for "compelling circumstances."  All of these nonpregnant employees were fired for excessive absences, but were reinstated within days of termination.  Plaintiff left work in June 2004, because she was pregnant, and her pregnancy was not considered a "compelling circumstance." Based on this evidence, a jury could conclude that Plaintiff has was treated less favorably than the non-pregnant employees.

With respect to the Title VII and ACRA gender claims, Plaintiff failed to raise a reasonable inference that her 2004 termination was motivated by her sex.  At least three women were reinstated after they were fired for excessive absenteeism.[78]  So, there is no evidence that males were treated more favorably than females.  Further, there is no direct evidence that her supervisors harbored any gender bias.  Finally, Plaintiff testified that she did not believe her

---

[75] Doc. No. 28, Pl. Ex. K.

[76] Doc. No. 28, Pl. Ex. M.

[77] Doc. No. 28, Pl. Ex. O.

[78] Doc. No. 16, Def. Ex. 2, at 27 (testimony of Ed Shelley that he reinstated two women after they were terminated due to absenteeism); Doc. No. 28, Pl. Ex. M (return to work document involving a female employee who was reinstated soon after termination).

termination in 2004 was related to her gender.[79]  In view of this, the gender claim is not strong enough to raise a jury question.

## V.  Plaintiff's Motion to Amend

Plaintiff filed a Motion to Amend her Complaint to add additional claims based on a third termination that took place in the summer of 2006.[80]  Plaintiff alleges that this last termination constitutes denial of FMLA leave and retaliation for asserting rights under the FMLA.[81]

As a general rule, leave to amend "shall be freely given when justice so requires."[82]  The court may deny a motion to amend for various reasons including "undue delay, bad faith dilatory motive on the part of the movant, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment."[83]  The court has discretion to grant or deny a motion to amend.[84]

There is no evidence that Plaintiff's additional allegations based on violations of the FMLA will cause undue delay, or that these allegations have been made for improper motives. In view of this, Plaintiff may amend her complaint to add new FMLA allegations  However, additional allegations of Title VII gender and pregnancy discrimination will not be allowed for two reasons.  First, Plaintiff's present gender discrimination claim lacks sufficient foundation,

---

[79]Doc. No. 16, Def. Ex. 1, at 95.

[80]Doc.  57-2, ¶ 24.

[81]*Id.*

[82]Fed. R.Civ. P. 15(a).

[83]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

[84]*Moore-El v. Luebbers*, 446 F.3d 890 (8th Cir.  2006).

and an amended complaint based on new allegations of gender discrimination will be futile. Second, Plaintiff does not attach a "Right to Sue" letter showing that she exhausted her claims under Title VII and the PDA, and "failure to exhaust" makes such allegations futile. Finally, Plaintiff will not be allowed to amend to add additional ACRA claims based on gender discrimination, but additional ACRA claims based on pregnancy discrimination will be allowed.

## VI. Conclusion

From all of the above, the following findings are made:

The Motion for Summary Judgment based on the Family Medical Leave Act claims is DENIED.

The Motion for Summary Judgment based on the Pregnancy Discrimination Act and the Arkansas Civil Rights Act is DENIED.

The Motion for Summary Judgment based on Gender Discrimination under Title VII and the Arkansas Civil Rights Act is GRANTED.

The Motion to Amend the Complaint to add new FMLA and PDA allegations is GRANTED.

Plaintiff's Motion to Strike Defendant's Response is DENIED as moot.

IT IS SO ORDERED this 9th day of November, 2006.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE